IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBY BOLLER, | Case No. 1:06-cv-1138 LJO TAG |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS ON APPEAL FROM A FINAL ADMINISTRATIVE DECISION |
| vs. | |
| MICHAEL J. ASTRUE,[1] Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Ruby Boller[2] ("Claimant") seeks judicial review of an administrative decision denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381 et seq. (Doc. 2). Pending before the Court is Claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner"). Claimant filed her complaint on August 18, 2006, (Doc. 2), and her opening brief on February 28, 2007. (Doc. 13). The Commissioner filed his opposing brief on April 30, 2007. (Doc. 16). Claimant filed her reply brief on May 14, 2007. (Doc. 17).

**JURISDICTION**

On August 21, 2001, Claimant protectively filed an application for SSI and, on October 19, 2001, her undated SSI application was filed in the local office. (AR 73-77). Her application was denied initially and on reconsideration. (AR 46, 52, 59-62, 65-68). After timely requesting a hearing, Claimant and her counsel appeared before Administrative Law Judge ("ALJ") James Ross

---

[1] Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social Security Administration. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

[2] Claimant's surname changed to Roccoforte when she remarried in approximately 2004. (See AR 234, 287).

1

on October 15, 2002.  (AR 69, 27-45).  On January 22, 2003, the ALJ issued a written decision (the "2003 decision") finding that Claimant was not disabled for purposes of SSI.  (AR 13-18).  On March 27, 2003, the Appeals Council denied Claimant's request for review, rendering the ALJ's determination the final decision of the Commissioner.  (AR 4-5).  Claimant timely appealed the Commissioner's decision to this Court.  (See Case No. 03-cv-5743).  On May 24, 2004, the Magistrate Judge assigned to the case concluded that the ALJ erred only in finding that Claimant could perform a full range of light work without consulting a vocational expert, and remanded the matter for further consideration regarding whether there was work available in the national economy that Claimant could perform given her nonexertional impairments.  (No. 03-cv-5743, Dkt. No. 15; AR 270-282).  The Appeals Council subsequently vacated the Commissioner's final decision and remanded the matter to the ALJ to take appropriate action to comply with the Court order, which action included holding a new hearing and taking "any further action needed to complete the administrative record and issue a new decision."   (AR 286).

The ALJ held a second hearing on December 14, 2005, at which time he heard testimony from Claimant and vocational expert ("VE") Kenneth Ferra.[3]  (AR 385-396).  On March 3, 2006, ALJ Ross issued a decision (the "2006 decision") in which he again concluded that Claimant was not eligible for benefits under Title XVI of the Act.  (AR 230-239).  On June 19, 2006, the Appeals Council denied Claimant's request for review on jurisdictional grounds, thereby rendering the ALJ's decision the final decision of the Commissioner.  (AR 219-22).  The final decision is appealable to the district court pursuant to 42 U.S.C. § 405(g).  The initiation of an appeal in the district court must be commenced within sixty (60) days of the Appeal Council's decision.  Id.  On August 18, 2006, Claimant timely filed this action.  (Doc. 2).

### STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcripts, the ALJ's decisions, and the briefs filed by Claimant and the Commissioner, and, therefore, only will be summarized

---

[3] The parties appeared before ALJ Ross on April 12, 2005, for the hearing.  (AR 379-84).  At Claimant's request, the ALJ continued the hearing to enable new medical records from Claimant's new treating physicians to be submitted to the ALJ.  (Id.).

2

here.  In her SSI paperwork, Claimant claimed an inability to work due to arthritis with joint pain, severe muscle spasms, myalgia, spinal surgery with a Harrington rod implant, and "mental incapacitation," alleging an onset date of September 1989.  (AR 74, 81).

At the administrative hearings, Claimant, represented by counsel, testified that she was born on April 29, 1965, making her 40 years old at the time of ALJ Ross' March 3, 2006 decision on remand, and she received her GED in May 2002.  (AR 31, 42).  She further testified that she is divorced with three boys at home at the time of the October 2002 hearing, but only two children living at home during the December 2005 hearing.  (Id.; AR 390).  Public assistance, i.e., AFDC, constituted Claimant's sole source of income, and she received health benefits under MediCal.  (AR 32, 390-391).

Claimant stated that she last worked as a cashier in 1990.  (AR 32).  She testified that she cannot work because she suffers constant lower-back/hip pain, which is a 9 on a 10-point scale, and continuous muscle spasms in her upper back.  (AR 33, 38).  Claimant clarified that the pain decreases to an 8 when she took her medication.  (AR 390; see AR 38 (pain decreased to a 5 with medication in 2002)).  Claimant explained that the pain began in 1980, when she underwent back surgery for placement of a rod to correct her scoliosis.  (AR 34, 39).  Claimant also testified that she was undergoing tests to ascertain why she had trouble walking and complained that her hands hurt and become numb up to five times daily.  (AR 34-35).  She also stated that she suffers from asthma, for which she uses a nebulizer.  (AR 37).  As to her psychological problems, Claimant stated that she occasionally hears a group of people talking when nobody is there.  (AR 36).  Claimant also testified that she feels worthless, has no interest in things, cannot concentrate, has suicidal thoughts and crying spells, and is paranoid.  (AR 37).

Claimant testified that the numbness in her hands causes her difficulty in grabbing and maintaining a grip on things, and her leg pain precludes her from walking more than one-half of a block, further adding that she can sit or stand between fifteen and thirty minutes before changing positions.  (AR 35-36, 40).  She acknowledged that physical therapy helped her neck, and she has tens unit that diminishes her muscle spasms.  (AR 39).  Claimant further testified that she wears a back brace every day.  (AR 40).

1    Regarding her daily activities, Claimant testified that she lays downs ten times daily for one-
2 half to one hour, which is her most comfortable position. (AR 40, 42).  According to Claimant, her
3 sons do the housework and help with the cooking, and her mother and then-boyfriend help with the
4 grocery shopping.  (Id.)  She testified that she attends church services irregularly, does not visit
5 friends or go to the movies, and is in "adaptive PE" to learn exercises that will keep her from getting
6 fat without causing her to hurt herself.  (AR 41).

7    Vocational expert Kenneth Ferra ("VE") then testified regarding whether there were jobs in
8 the national and regional economy that an individual with the limitations that the ALJ posed could
9 perform. (AR 393-394).  In both of ALJ Ross' hypotheticals, the individual presented was 40 years
10 old with no prior work history, had attained a GED, who could lift 20 pounds occasionally and 10
11 pounds frequently, sit 6 out of 8 hours daily, could not do repetitive stooping, and was limited to one
12 or two-step instruction-type work.  The ALJ added, in the first hypothetical, that the individual also
13 could stand or walk 6 out of 8 hours daily.  VE Ferra responded that such a person could perform
14 work as a cleaner/housekeeper, such as for a motel, of which there were 12,000 positions in
15 California and approximately 120,000 positions nationally.  (AR 393-394).  The VE noted that this
16 job constituted unskilled light work that required only occasional stooping.  (Id.).  In the second
17 hypothetical, the ALJ imposed further restrictions, limiting the individual to standing or walking no
18 more than 2 or 3 hours in an 8-hour day.  VE Ferra testified that this individual would be able to
19 perform some assembly positions, with a total number of jobs in California approximating 3,000 and
20 roughly 30,000 positions in the national economy.  (AR 394).

21    Claimant's attorney asked whether there were jobs available for an individual who could sit
22 for 1 hour, stand for 15 minutes, walk 1 block, and who had to lie down 4 hours in an 8-hour day?
23 VE Ferra responded in the negative.  (AR 395).  He also reported that there were no jobs available
24 for someone who could not lift anything at all.  (Id.).

25    **RELEVANT LEGAL FRAMEWORK**

26    To qualify as disabled under Title XVI of the Act, an applicant for SSI must be "unable to
27 engage in any substantial gainful activity by reason of any medically determinable physical or mental
28 impairment which can be expected to result in death or which has lasted or can be expected to last

4

for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. See 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Servs., 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989)(citation omitted).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400, 91 S. Ct. at 1426-1427. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the

1  Commissioner is conclusive. <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

2  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal

3  standards were not applied in weighing the evidence and making the decision. <u>Brawner v. Secretary

4  of Health and Human Servs.</u>, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled under Title XVI of the Act. 20 C.F.R. § 416.920. Step one determines if the claimant is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. § 416.920(a)(4)(I), (b). If she is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments that meet the duration requirements set forth in 20 C.F.R. § 416.909; i.e. the impairment(s) are expected to result in death or continuously lasted or be expected to last at least twelve months. 20 C.F.R. § 416.920a(4)(ii), (c). If the claimant does not have a severe impairment, a combination of impairments, or meet the duration requirement, the disability claim is denied. <u>Id.</u>

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 416.920(a)(4)(iii), (d); 20 C.F.R. Pt. 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments and satisfies the duration requirement, the claimant is conclusively presumed to be disabled. 20 C.F.R. §§ 416.909, 416.920(a)(4)(iii), (d). If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from doing work performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 416.920(a)(4)(iv), (e); 416.960(b). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(v), (f) and (g); 416.960(b) and (c). <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2290 -2292 (1987).

///

The initial burden of proof rests upon a claimant to establish that she "is entitled to the benefits claimed under the Act." Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971) (citations omitted). In terms of the five step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that an ALJ's "*affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999) (italics in original). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ALJ'S FINDINGS

The 2003 Decision

In his 2003 decision, ALJ Ross found, at step one, that Claimant had not engaged in any substantial gainful activity since her alleged onset date of September 1989. (AR 13, 17). At step two, the ALJ determined that Claimant suffered from the following severe impairments: "lower back pain with a history of scoliosis, and depression, mostly by history." (Id.). At step three, the ALJ found that Claimant's impairments, whether considered alone or in combination, were not severe enough to meet or medically equal the impairments listed in Appendix 1, Subpt P, Regulations No. 4, and he specifically ruled out Listings 1.00 et seq. (musculoskeletal disorders) and 12.04 (affective disorders). (AR 14, 17). ALJ Ross discussed, in detail, the medical records, reports, and opinions submitted by Claimant's treating physicians and examining consultants, and determined that Claimant retained the residual functional capacity ("RFC") to perform light work with limitations on repetitive stooping, notwithstanding her mental inability to engage in work that required carrying out anything more than one-and-two-step instructions (her "nonexertional" limitations)." (AR 14-18). The ALJ further found that Claimant's subjective pain testimony was not wholly credible. (AR 16-17). At step four, the ALJ concluded that Claimant had no past relevant work. (AR 18). Finally, ALJ Ross found that, in light of Claimant's age, education, and work experience, coupled with the

fact that her ability to perform light work was not compromised by her nonexertional limitations, he could utilize Medical-Vocational Rule 202.20 (20 C.F.R. Subpt. P, App. 2, Rule 202.20) as a framework to determine that Claimant was not disabled and not entitled to SSI payments. (AR 18).

The 2006 Decision

In his March 2006 decision, ALJ Ross again found, at step one, that Claimant had not engaged in any substantial gainful activity. (AR 232). At step two, he found that she suffered "lower back pain with a history of scoliosis, and depression, mostly by history," which he considered severe impairments. (Id.). At step three, ALJ Ross determined that Claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, including Listings 1.00 et seq. (musculoskeletal disorders) and 12.04 (affective disorders).

The ALJ then determined that Claimant retained the RFC to lift 10 pounds frequently and 20 pounds occasionally; sit, stand, or walk for 6 hours in an 8 hour day; but that she could not work in a position that required repetitive stooping. (AR 233). He further found that she had the "mental capacity to understand, remember, and carry out one-and two-step instructions." (Id.). Based on the foregoing, the ALJ concluded that Claimant was capable of performing light work that existed in the national economy. (Id.). ALJ Ross explained that he considered, inter alia, Social Security Rulings ("SSR") 96-2p, 96-4p, 96-5p, 96-6p, and 96-7p, to evaluate Claimant's credibility and the medical evidence. (Id.). He then stated that, although Claimant suffered ailments that could produce the symptoms about which she testified, he did not find her testimony credible with respect to the alleged duration, intensity, and limiting effects of her symptoms. (Id.). ALJ Ross next discussed, in detail, the medical evidence and opinions from treating and consulting doctors, including the medical records and opinions acquired from Claimant's new treating physicians. (AR 233-237).

At step four, the ALJ determined that Claimant had no past relevant work. (AR 237). At step five, ALJ Ross considered Claimant's age, education, work experience, RFC, and the testimony of VE Ferra, and concluded that there were a significant number of jobs available in the national economy that Claimant could perform. (AR 238-239). He specifically noted that the VE's testimony was consistent with information in the Dictionary of Occupational Titles, as required under SSR 00-

4p. (AR 238). The ALJ, therefore, concluded that Claimant was not disabled and, thus, was not entitled to SSI benefits for any period of time through the date of the 2006 decision. (AR 239).

## ISSUES

Claimant's Opening Brief raised the following issues for consideration:

I. The ALJ misinterpreted the limitations imposed by consultant Dr. Scott Selco's orthopedic examination and failed to provide clear and convincing reasons for rejecting the consultant's reported restrictions;

II. The ALJ did not provide clear and convincing reasons for rejecting the opinions of Claimant's treating physician;

III. The ALJ erroneously found Claimant's subjective testimony not credible.

This Court must uphold the Commissioner's determination that Claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## DISCUSSION

I.  Examining Consultant's Restrictions

Claimant asserts that the ALJ misinterpreted the restrictions imposed by examining consultant, neurologist Dr. Scott Selco. (Doc. 13, pp. 4-5). Specifically, Claimant contends that the ALJ misconstrued Dr. Selco's restriction as to Claimant's ability to lift ten pounds occasionally, erroneously finding that it was a precautionary limitation, when, in fact, Dr. Selco specifically stated that Claimant should not lift more than ten pounds frequently or occasionally. (Doc. 13, p. 5). Although Claimant acknowledges that Dr. Selco's statement that Claimant try to find a job that required no lifting was, in fact, precautionary, she avers that Dr. Selco's limiting Claimant to lifting a maximum of ten pounds was not a precautionary measure but an imposed restriction. (Id.). Finally, Claimant contends that, because the ALJ's rejection of Dr. Selco's opinion is based on his misinterpretation of the doctor's report, the ALJ necessarily failed to provide clear and convincing reasons for rejecting the limitations set forth in the opinion. (Doc. 13, p. 6).

It is for the ALJ, not the courts, to resolve ambiguities and conflicts in, inter alia, the medical testimony and evidence. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (citations and

quotations omitted).  Where there is sufficient evidence to support the ALJ's decision, the court must uphold that decision if a rational interpretation of the evidence supports the decision.  Id. at 1039-1040; Allen, 749 F.2d at 577.

In the instant case, Dr. Selco examined Claimant on November 30, 2002, and reported that she did not exhibit signs of acute distress or pain behavior consistent with her complaints.  In additional, he noted that Claimant was not fully cooperative and, to the extent she allowed him to perform a physical examination, he was not able to reproduce the pain or muscle spasms about which she complained.  (AR 206-210).  He reported that her muscle strength was 5/5 in her upper and lower extremities.  (AR 209).  Dr. Selco opined that Claimant exaggerated her symptoms to support her application for disability benefits.  (AR 207-209).  His overall diagnoses were scoliosis "status post surgical repair in the remote past" and elbow tendinitis.  (AR 209).  At issue is Dr. Selco's statements that, because of Claimant's scoliosis and complaints of pain, "it is reasonable to suggests that she lift no more than 10 pounds frequently and occasionally, and perhaps if she were to work, she could find a job that does not require any lifting whatsoever.  This would just simply be a precaution."  (AR 210).  Dr. Selco also completed a check-box form based on his report in which he indicated that Claimant could frequently and occasionally lift and carry 10 pounds.  (AR 211).

The ALJ concluded that Dr. Selco's second sentence, "[t]his would just simply be a precaution" (AR 210), rendered the entire previous sentence limiting Claimant to lifting a maximum of 10 pounds and finding a job at which no lifting was required merely precautionary.  (AR 236). ALJ Ross further explained that he discounted Dr. Selco's lifting limitations because they were not supported by medical findings, including Claimant's 5/5 grip and the lack of any radicular symptoms.  (Id.).  In light of the syntax and structure of Dr. Selco's statement regarding Claimant's ability to lift no more than ten-pounds, which was followed by his qualifying sentence that the restriction was precautionary, the ALJ's interpretation of the ambiguous report is rationale and, thus, will not be called into question by this Court, regardless of the possibility of alternative interpretations.  Allen, 749 F.2d at 579.

Moreover, the ALJ discussed the medical records of Claimant's treating physicians, Drs. R. Helston, Alexander Austria, and Afaq Kazi, and additionally noted that he had reviewed the

entire record before rendering his decision. (AR 232-37). Although ALJ Ross discounted Dr. Austria's check-box assessment (see Issue II below), it is noteworthy that Dr. Austria limited Claimant to lifting and carrying no more than 20 pounds occasionally, which is consistent with the ALJ's conclusion that she could lift and carry 10 pounds frequently and 20 pounds occasionally. (AR 236, 305). Thus, even if the ALJ misconstrued the extent to which Dr. Selco's precautionary statement applied, it would not affect his overall finding as to Claimant's lifting limitations. See Batson v. Comm'r Soc. Sec., 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where it did not negate the validity of the ALJ's ultimate conclusion).

II.  Rejection of Treating Physician's Opinion

Claimant next contends that the ALJ erred in rejecting a questionnaire and medical report completed by Alexander Austria, M.D., her treating physician since September 2004, who determined that Claimant lacked the RFC to perform even sedentary work and would remain disabled at least through September 20, 2006. (Doc. 13, pp. 6-7). Claimant asserts that the ALJ rejected the limitations and restrictions imposed by her treating physician, who referred her to a pain management clinic and oversaw her treatment without needing to see her frequently, without providing clear and convincing reasons for doing so. (Doc. 13, p. 8).

The courts distinguish among the opinions of three types of physicians: treating physicians, physicians who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830, as amended (9th Cir. 1996). The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998); Lester, 81 F.3d at 830. Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Id. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983)).

///

Courts within the Ninth Circuit have recognized various reasons deemed sufficient for the ALJ to disregard a treating or examining physician's opinion.  These reasons include: conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for physicians' reports that are based substantially on the claimant's subjective complaints of pain.  Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1463-1464 (9th Cir. 1995); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

The ALJ also may disregard a physician's opinion that is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion."  Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986) (brackets added).  Similarly, a check-box form that does not contain an explanation of the bases for the conclusions made is entitled to little weight.  Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996).  In contrast, vague, broad, or generalized reasons are insufficient grounds for the ALJ to reject a treating physician's opinion.  McAllister, 888 F.2d at 602.

Regardless of the weight given to a treating physician's medical opinion, it is not binding on the ALJ with respect to the ultimate determination of disability.  See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194-1195 (9th Cir. 2004) (treating physician had opined that claimant "met or equaled the criteria" for a listed impairment under 20 C.F.R. § 404, Subpt. P, App. 1, § 105C); Magallanes v. Bowen, 881 F. 2d 747, 751 (9th Cir. 1909)("treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability").

In the instant case, Dr. Austria completed a questionnaire and a form similar to a check-box type on April 3, 2005.  (AR 304-305).  In response to the questions posed in the one-page questionnaire, Dr. Austria reported that, as defined, Claimant would not be able to perform sedentary work due to her degenerative disc disease and post laminectomy pain syndrome.  (AR 304). Dr. Austria's objective bases for limiting Claimant to two hours of walking, sitting, and standing per day were her limited range of motion and lower back pain upon movement.  (Id.).  In the check-box form, Dr. Austria again restricted Claimant to two hours of walking, sitting, and standing; stated that she could lift 20 pounds occasionally; indicated that Claimant could not bend, squat, or crawl: and imposed mild restrictions with respect to activities involving unprotected heights, being around moving machinery, and driving automotive equipment.  (AR 305).  Dr. Austria referred Claimant to

the Advanced Spine Care & Pain Mgmt. d/b/a Pain Institute of California ("Pain Institute"), where she was treated by, inter alia, Dr. Afaq Kazi, M.D. (AR 338). The Pain Institute diagnosed Claimant with "scoliosis status post T3-L3 fusion; lumbar degenerative disk disease, fibromyalgia, [and] facet arthropathy[4] at L4-L5 and L5-S1." (AR 329). Its initial physical examination of Claimant indicated that she was not in acute distress and, although she had some limitations in flexion, and tenderness on palpitation, her upper extremity motor strength was 5/5 bilaterally, and her gait was normal. (AR 328-329). Claimant received an epidural steroid injection in January 2005, which, two and one-half months later, she reported still caused her a marked improvement in the severity of her back pain, the frequency of her headaches, total alleviation of her leg pain, and improved sleep. (AR 324-325).

There is no dispute that Claimant's impairments result in some limitations. (See AR 233). However, as ALJ Ross found, Dr. Austria's check-the-box style questionnaire and opinion, which imposed restrictions that foreclosed Claimant from performing even sedentary work, were not supported by his own treatment notes or those of the Pain Institute, whose records evidenced that Claimant's symptoms had improved. (AR 236, 304-305; see above). In addition, the ALJ properly gave no credence to Dr. Austria's report to the California Health and Welfare Agency in which he opined that Claimant was disabled and could not work, noting that such a determination was for him, not the doctor, to make. (AR 356); Batson. 359 F.3d at 1194-1195. The ALJ, therefore set forth specific and legitimate reasons for rejecting the cursory opinions submitted by Dr. Austria.

The Court is mindful of the recent decision in Orn v. Astrue, 495 F.3d 625 (9th Cir. 2007), where the Ninth Circuit reiterated the deference that should be given to a treating physician. However, where the treating physician's opinion is not supported by the medical records in the first instance, as here, Orn is not instructive.

III.  Discounting Claimant's Credibility

Finally, Claimant asserts that the ALJ did not provide a clear and convincing reason for finding her subjective pain testimony not credible, given that he acknowledged that her ailments could produce pain and he did not find that she was a malingerer. (Doc. 13, p. 9). Specifically,

---

[4] "Arthropathy" is any disease affecting a joint.

Claimant avers that the ALJ, in concluding that Claimant's allegations of pain and the limitations it caused her were implausible because she was the sole caregiver for three children, failed to consider testimony and record evidence demonstrating that she did not engage in the activities generally associated with those of a caregiver, such as housework. (Id.). Claimant further contends that the ALJ ignored the full extent of treatment she underwent, which included painful steroid injections and taking narcotics to alleviate the pain, when he discounted her testimony. (Doc. 13, p. 10).

A two step analysis applies at the administrative level when considering a claimant's subjective credibility. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment and show that the impairment could reasonably be expected to produce some degree of symptom. Id. at 1281-1282. Pursuant to SSR 96-7p, however, the ALJ may not disregard the claimant's pain testimony only because there is a lack of medical records evidencing an impairment that causes pain. SSR 96-7p; Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Nonetheless, if there is no evidence that the claimant is malingering, the ALJ can reject the claimant's testimony about the severity of his or her symptoms "only by offering specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1281. This level of specificity is crucial because, in its absence, effective judicial review may not be possible. See Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

The Ninth Circuit has long held that, when a claimant testifies about disabling pain, but does not seek treatment for it or comply with prescribed treatment, the ALJ may find that the claimant's pain testimony is "unjustified or exaggerated." Orn v. Astrue, 495 F.3d at 638. This Court further notes that there are any number of clear and specific findings that the ALJ can make, many of which are identified in SSR 96-7p. Such findings include: (1) whether "the level or frequency of treatment is inconsistent with the level of complaints," SSR 96-7p (Medical Treatment History), (2) whether

14

"the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure," id., (3) the consistency of statements made by the claimant to physicians, to those deciding benefits under other programs (e.g., workers' compensation), and to the Social Security Administration itself, while recognizing that "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and [that] this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms." Id.  Each of these and other potential findings are fact-specific, precisely the province of the ALJ.  Some other ALJ findings, as identified in reported cases, are illustrative and demonstrate the many ways in which ALJs can draw credibility inferences from the facts at hand: (1) an ALJ found that claimant's testimony that her neck pain was so severe that she had to cut her long hair for relief was contradicted by the fact that her hair reached well below her shoulders at the administrative hearing, Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003), (2) the same ALJ found that claimant's testimony that she had never undergone physical therapy was contradicted by medical records indicating that she had, in fact, attempted such treatments, id., (3) an ALJ found that claimant's "'extremely poor work history'" and low "'propensity to work'" negatively affected her credibility regarding her assertion that her disability precluded work, Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002), (4) the same ALJ found that claimant had not been a reliable historian, "'presenting conflicting information about her drug and alcohol usage,'" id., (5) the same ALJ also found that claimant's efforts to impede accurate testing of her limitations argued strongly against her credibility, (6) an ALJ found that claimant had been uncooperative during consultative examinations, and illustrated that finding with a specific statement by a physician regarding claimant's "'poor effort,'" Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001), (7) the same ALJ found that claimant tended to exaggerate, and illustrated that finding with a specific comment by a physician that claimant was deficient during cognitive testing but "'much better'" when giving reasons for her inability to work, id., (8) an ALJ found that claimant's pain assertions were inconsistent with the opinion of his own treating physician, who was "'quite emphatic in his report about the lack of objective evidence to support claimant's complaints of pain and weakness,'" Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995), (9) an ALJ found that

claimant's limited and recent use of non-narcotic pain medications were inconsistent with her claim of extreme pain, Ruiz v. Apfel, 24 F. Supp. 2d 1045, 1048-1049 (C.D. Cal. 1998) and (10) the same ALJ found that claimant's conservative treatment regimen was inconsistent with her complaints of extreme pain, id. at 1049; see also Light, 119 F.3d at 792 ("the ALJ may consider [claimant's] reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains").

Here, the ALJ acknowledged that Claimant met the first step in Smolen, 80 F.3d at 1281, i.e., that her medically determinable impairments could produce the symptoms that she allegedly suffered. (AR 233). ALJ Ross, however, found that Claimant's testimony was not entirely credible with respect to the "intensity, duration, and limiting effects" of the alleged symptoms. (Id.). The ALJ evaluated Claimant's credibility in connection with the medical evidence, most notably her reports that physical therapy and steroid injections virtually eradicated her muscle spasms and pain, such that they would not interfere with her ability to work. (See AR 234-36). In addition, the ALJ noted that the examining consultant, Dr. Selco, opined that Claimant exaggerated her symptoms, which opinion the ALJ could consider a reflection of her veracity. (AR 234); Light, 119 F.3d at 792. Further, the ALJ observed that Claimant was the caregiver for her three children, and that she cooked, shopped, and did the housekeeping. (AR 237). Although Claimant testified that others performed these chores, she reported in her SSI paperwork that she did, in fact, get her sons ready for school, prepare meals, make her bed, and care for her personal hygiene, although she did need help carrying heavy grocery bags. (Compare AR 40-42 (testimony) with AR 108-11 (SSI paperwork)).

Given the disparity between Claimant's symptoms as reported to her physicians and testified to at the hearing, the daily activities she could perform as indicated in the SSI paperwork compared to her testimony that she could do virtually nothing, and the other inconsistencies between her testimony and record statements and evidence, the ALJ provided adequate reasons for finding that Claimant's symptoms was not as severe as she claimed in her testimony. Tonapetyan, 242 F.3d at 1148; Light, 119 F.3d at 792; SSR 96-7p.

///

**CONCLUSION AND RECOMMENDATIONS**

For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ properly concluded Claimant is not disabled. This Court further finds the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court RECOMMENDS:

1. That Claimant's Social Security complaint be DENIED; and

2. That judgment be ENTERED for Defendant Michael J. Astrue and against Claimant Ruby Boller.

These Findings and Recommendations are submitted to the United States District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304. No later than fifteen (15) days after service of these Findings and Recommendations, any party may file written objections to these Findings and Recommendations with the Court and serve a copy on all parties and the Magistrate Judge and otherwise in compliance with this Court's Local Rule 72-304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Responses to objections shall be filed and served no later than ten (10) court days after service of the objections and otherwise in compliance with this Court's Local Rule 72-304(d). A copy of the responses shall be served on the Magistrate Judge. The District Judge will review the Findings and Recommendations, pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Judge's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **January 29, 2008**                                      /s/ Theresa A. Goldner
                                                           UNITED STATES MAGISTRATE JUDGE